Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Selective Insurance of the Southeast was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issue for determination is whether plaintiff sustained a compensable back injury on June 1, 1997, and, if so, to what benefits is she entitled under the Act?
5. The parties submitted the following medical records into evidence:
a. Dr. James Cummings, two pages;
b. Albemarle Neurological Associates, three pages;
c. Albemarle Hospital, fifty pages;
d. Edenton Internal Medicine, two pages;
e. Low Back Neck Clinic, fifteen pages;
f. Chowan Hospital Physical Therapy, twenty-two pages; and
g. Medical Bills, twenty-nine pages.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old. Plaintiff obtained her G.E.D. in 1984.
2. Plaintiff has work experience as a presser at a textile plant, as a school bus driver, and as a grocery store deli clerk.
3. Plaintiff had pre-existing leg problems, fibromyalgia, and irritable bowel syndrome. She has also experienced low back pain, spasms, and headaches since approximately 1983 when her second child was born.
4. On October 30, 1995, plaintiff sought chiropractic treatment from Robert LaVictorie of Low Back and Neck Clinic after lifting a laundry basket. Plaintiff completed a patient questionnaire on which she noted having back pain, headaches, neck pain, and stiffness on a monthly basis for twelve years following the birth of her second child.
5. Plaintiff worked for defendant-employer in 1995 for a short period of time as a kitchen worker.
6. In early 1997, plaintiff returned to defendant-employer as a kitchen prep worker. Her duties involved preparing fish and other items to be cooked and cleaning the kitchen.
7. Plaintiff drove a school bus in the morning and worked for defendant-employer from 3:30 p.m. until approximately 9:00 p.m. Defendant-employer paid plaintiff $6.00 per hour for eighteen to twenty hours per week.
8. On or about April 28, 1997, plaintiff sought treatment at Albemarle Hospitals Emergency Room for right shoulder and hand pain after lifting a small pot at work. This episode was not filed as a workers compensation claim.
9. Following the examination on April 28, 1997, plaintiff was given a soft cervical collar due to the possibility that her condition was due to a disc problem. She was also diagnosed with bursitis of the shoulder. A cervical x-ray revealed loss of normal lordotic curvature involving the cervical spine, compatible with muscle spasm.
10. Plaintiff continued to work after the April 1997 episode of right shoulder pain.
11. On June 21, 1997, plaintiff was going down the steps at work to wipe the refrigerator when she fell and hit her low back, buttocks, and right ankle on the steps. She left work early and was helped to her car by a co-worker. Plaintiff drove to her fathers house and her daughter drove plaintiff home.
12. On June 22, 1997, plaintiff went to the emergency room at Albemarle Hospital where plaintiffs cervical spine, dorsal spine, lumbar spine, and right ankle were x-rayed. All x-rays were normal. Plaintiff was referred to her family doctor for follow-up. Plaintiff was given no work restrictions.
13. Ima Jean Lane, defendant-employers owner, telephoned plaintiff and asked her to come to work after June 22, 1997. Plaintiff told Mrs. Lane that she had been to a doctor and was unable to come to work.
14. On July 1, 1997, plaintiff went to her family doctor at Edenton Internal Medicine for a refill of prior prescriptions. She did not seek treatment for the low back pain from her family doctor until July 7, 1997. No work restrictions were given at either visit.
15. On July 11, 1997, defendant-employer prepared a Form 19, which was received by the carrier on July 14, 1997. Following investigation, plaintiff was advised her claim was denied. The carrier filed a Form 61 with the Commission on July 24, 1997.
16. On July 23, 1997, plaintiff filed Forms 18 and 33 with the Commission.
17. On or about August 6, 1997, plaintiffs family doctor sent her for physical therapy for her back, neck, and shoulder. Plaintiff underwent therapy through September 19, 1997, at which time the therapist noted plaintiffs pain was improved although her posture was still guarded.
18. Plaintiffs gastroenterologist Dr. Faber referred her to Dr. Lloyd Hitchings of Albemarle Neurological Associates. On November 25, 1997, Dr. Hitchings examined plaintiff. Plaintiff reported a history of falling backwards on her buttocks and lumbar spine. She denied head trauma in the fall. She reported having low back and neck spasms after the fall, but that the low back pain had resolved. Plaintiff also reported sharp head pain and neck stiffness. Dr. Hitchings ordered a cervical spine MRI. No work restrictions were given.
19. The cervical MRI taken on November 26, 1997 was reported as normal.
20. On January 7, 1998, plaintiff returned to Dr. Hitchings complaining of a neck ache. Dr. Hitchings noted that plaintiff might have chronic pain syndrome. No restrictions were given, however.
21. On March 9, 1998, plaintiff went to Dr. James Cummings for an epidural steroid injection for neck and head pain. She received a second injection on March 26, 1998.
22. On April 17, 1998, plaintiff reported to Dr. Cummings that her neck pain was improved, so a third injection was not given. She was advised to return for treatment as needed, but she did not.
23. On June 23, 1998, plaintiff returned to her chiropractor for right-sided cervical pain and headache. She received chiropractic treatment through January 4, 1999.
24. On January 15, 1999, the chiropractor wrote to plaintiff in response to her questions regarding out-of-work time. Robert LaVictorie advised that plaintiff should be excused from work from June 23, 1998 through January 31, 1999.
25. Plaintiff has not worked in any employment or made any efforts to find work since June 21, 1997
26. The parties did not depose any medical providers in this case. Given plaintiffs history of back and neck pain and spasms since 1983, there is insufficient medical evidence in the record to establish by the greater weight that plaintiffs condition was caused or aggravated by the June 21, 1997 incident on the job. Rather, the competent medical evidence establishes that plaintiff had longstanding back symptoms for which she had regularly sought medical or chiropractic treatment. Therefore, the Commission finds that plaintiffs inability, if any, to work after June 21, 1997 was not due to the fall at work.
27. There is insufficient evidence of record to show by the greater weight that plaintiffs treatment by Dr. LaVictorie beginning June 23, 1998, was for conditions causally related to the fall at work.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident as a result of a specific traumatic incident of the work assigned on June 21, 1997. N.C. Gen. Stat. 97-2(6). However, plaintiff merely sustained a back strain that did not require her to be out of work. Any disability after June 21, 1997 was not causally related to the injury on June 21, 1997. Click v. PilotFreight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
2. Plaintiff is not entitled to temporary total disability benefits. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to have defendants pay for the medical expenses for treatment at Albemarle Hospital, the treatment on July 7, 1997 with her family doctor, treatment with Edenton Internal Medicine, her two visits to Dr. Hitchings, physical therapy, and the epidural injections administered by Dr. Cummings. The approved medical expenses do not include payment for chiropractic treatment. N.C. Gen. Stat. 97-2(19);97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Plaintiff is not entitled to indemnity benefits.
2. Defendants shall pay for medical expenses incurred for treatment at Albemarle Hospital, the treatment on July 7, 1997 with her family doctor, treatment with Edenton Internal Medicine, her two visits to Dr. Hitchings, physical therapy, and the epidural injections administered by Dr. Cummings. The approved medical expenses do not include treatment by Dr. LaVictorie.
3. Defendants shall pay the costs.
This the ___ day of November 2000.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_________________ DIANNE C. SELLERS COMMISSIONER
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER